Eric. E. Lynch (AZ #025049)
Jack L. Horstmann (AZ #037790)
**POLSINELLI PC**
One East Washington, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 650-2000
elynch@polsinelli.com
jhorstmann@polsinelli.com

Leonard H. MacPhee (PHV application forthcoming)
Jess A. Dance (PHV application forthcoming)
Joyce G. Mazero (PHV application forthcoming)
**POLSINELLI PC**
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
Telephone: (303) 583-8234
lmacphee@polsinelli.com
jdance@polsinelli.com
jmazero@polsinelli.com
*Attorneys for Plaintiff Re-Bath, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Re-Bath, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Niko Zavala; New California Bathroom Corp.; and Valley Kitchen Remodeling LLC,<br><br>Defendants. | Civil Action No.__________________<br><br>**COMPLAINT** |

Plaintiff Re-Bath, LLC ("Plaintiff" or "Re-Bath") states the following for its Complaint against Defendants Niko Zavala ("Zavala"), New California Bathroom Corp. ("NCBC"), and Valley Kitchen Remodeling LLC, d/b/a Better Bath ("VKR" and collectively with Zavala and NCBC, "Defendants"):

**INTRODUCTION**

1. Re-Bath initiates this action seeking damages and injunctive relief as a result of Defendants' wrongful abandonment and repudiation of four franchise agreements, their

continuing breaches of those franchise agreements, and their unlawful operation of a competing bathroom remodeling business.

2. Re-Bath is a nationally recognized bathroom remodeling franchisor and the largest bathroom remodeling services franchise in the United States. Re-Bath licenses a distinctive system for the establishment and operation of a residential bathroom remodeling business under its federally registered trademarks. Re-Bath authorizes its franchisees to use its proprietary business system, confidential methods, operational standards, trade dress, trademarks, and know-how in the bathroom remodeling industry.

3. Key to Re-Bath's franchise model is uniformity, confidentiality, brand protection, and system compliance. In exchange for the right to use Re-Bath's trademarks and system, franchisees are required to operate strictly in accordance with Re-Bath's methods, standards, specifications, and confidential operating manuals; use Re-Bath's Marks and System only as authorized; protect Re-Bath's confidential information; pay royalties, advertising contributions, and other franchise fees; maintain required operations; and, upon termination and expiration, immediately cease using Re-Bath's Marks, System, confidential materials, identifiers, customer information, and proprietary methods ("Franchised Businesses"). The Franchise Agreements also restrict former franchisees and their principals from diverting Re-Bath customers or operating a competing business within the contractually restricted areas.

4. Zavala is the Owner, Principal, and Guarantor of NCBC, a former Re-Bath franchisee that was previously licensed to operate four Re-Bath Franchised Businesses across certain areas of Temecula, Riverside, Oakland, and Bay North, California (collectively, the "Territories"). **A true and accurate copy of each Franchised Business Territory is attached hereto as Exhibits A-1, A-2, A-3, and A-4**.

5. NCBC was a party to several franchise agreements with Re-Bath. Those agreements include:

(a) Franchise Agreement dated September 14, 2020, as amended by that certain Amendment dated September 14, 2020, and again by that certain Amendment dated May 30, 2025, by and among Re-Bath and NCBC ("Temecula Franchise Agreement");

(b) Franchise Agreement dated July 1, 2024, by and among Re-Bath and NCBC ("Riverside Franchise Agreement");

(c) Franchise Agreement dated March 15, 2025, as amended by that certain Amendment dated March 15, 2025, by among Re-Bath and NCBC ("Oakland Franchise Agreement");

(d) Franchise Agreement dated March 15, 2025, as amended by that certain Amendment dated March 15, 2025, by among Re-Bath and NCBC ("Bay North Franchise Agreement") (collectively, the "Franchise Agreements"). **A true and accurate copy of the Franchise Agreements are attached hereto as Exhibits B, C, D, and E**.

6. Through the Franchise Agreements, Zavala and NCBC operated Re-Bath Franchised Businesses for approximately 6 years and accumulated an extensive understanding of the Re-Bath System and methods of the bathroom remodeling business because of their access to Re-Bath's proprietary system, operational methods, development strategies, marketing techniques, standards, and business model.

7. Zavala personally guaranteed NCBC's performance under the Franchise Agreements pursuant to Guarantee, Indemnification, and Individual Covenants agreements executed in connection therewith (collectively, the "Guarantees"). He unconditionally guaranteed that NCBC's monetary and non-monetary obligations would be paid and performed, agreed to be personally bound by and personally liable for breaches of the Franchise Agreements, and expressly agreed to comply with the post-termination and restrictive covenant obligations. **A true and accurate copy of each Guarantee, Indemnification, and Individual Covenants agreement is attached hereto as Exhibit F**.

8. Under the Franchise Agreements, NCBC accepted and undertook the obligation to operate Re-Bath franchised businesses under Re-Bath's System for ten-year initial terms. NCBC further agreed that every detail of the Re-Bath System was important to maintaining high operating standards, increasing demand for Re-Bath products and services, and protecting Re-Bath's reputation and goodwill, and agreed to operate the Franchised Businesses in strict conformity with the methods, standards, and specifications prescribed by Re-Bath in the Manual or otherwise in writing. NCBC also agreed that all aspects of each Franchised Business would be conducted under the management and supervision of Zavala as Operating Owner, that daily operations would be supervised under active full-time management, and that the Franchised Businesses would remain open and in normal operation during the hours and days specified or approved by Re-Bath.

9. Zavala and NCBC breached the Franchise Agreements while operating by failing to operate in accordance with Re-Bath's standards and not paying fees due. Zavala and NCBC then falsely asserted they were rescinding the Franchise Agreements, stopped operating the franchise, and prematurely abandoned their franchised business by closing as a Re-Bath.

10. The breaches did not end with abandonment. At or around the same time they abandoned the Re-Bath franchises, Defendants began using VKR to operate a competing bathroom remodeling business under the name "Better Bath." Better Bath operates in the same markets, offers the same or substantially similar bathroom remodeling services, and uses the goodwill, experience, confidential know-how, customer relationships, and operational advantages Defendants obtained through their years as Re-Bath franchisees.

11. Defendants' continued operation of Better Bath violates the Franchise Agreements' post-termination obligations, including the obligations to cease use of Re-Bath's System, Marks, confidential methods, proprietary materials, identifiers, customer information, and goodwill; to return confidential materials; to provide and assign customer

contracts; to refrain from diverting Re-Bath customers; and to refrain from owning, operating, assisting, or participating in a competing business within the restricted areas.

12. Defendants' conduct has caused and continues to cause Re-Bath substantial damages, including unpaid past amounts due, lost future royalties and fees, liquidated damages, enforcement costs, attorneys' fees, lost product sales, lost customer opportunities, injury to goodwill and reputation, and irreparable harm to the Re-Bath System.

13. Re-Bath is entitled to (a) damages against Zavala and NCBC for their blatant and intentional breaches of the Franchise Agreements by failing to follow system standards, pay amounts owed and then prematurely abandoning operations and failing to comply with the post-termination obligations; and (b) permanent injunctive relief against all Defendants for the violations of the post-termination obligations under the Franchise Agreements.

## PARTIES

14. Re-Bath is a Delaware limited liability company with its principal place of business at 426 N. 44th Street, Suite 410, Phoenix, Arizona 85008.

15. NCBC is a California corporation with its principal place of business at 28822 Old Town Front St, Unit 204, Temecula, California 92590. NCBC operated the Franchised Businesses from 33528 Monte Verde Rd., Temecula, CA 92592.

16. Zavala is an individual domiciled in California. Zavala is the Owner, Principal, and Guarantor of NCBC. Zavala directed, controlled, and participated in NCBC's operations and the conduct alleged in this Complaint.

17. VKR is a California limited liability company with a principal address at 28822 Old Town Front Street, Suite 206, Temecula, California 92590. VKR does business as "Better Bath."

18. Upon information and belief Zavala owns, manages, directs, controls, and operates VKR.

19. NCBC and Zavala entered into Franchise Agreements and Guarantees with Re-Bath that are governed by Arizona law and require disputes to be brought in Arizona.

Defendants also transacted business with Re-Bath in Arizona, directed communications and payments to Re-Bath in Arizona, received franchise support from Re-Bath in Arizona, and agreed to continuing contractual obligations owed to Re-Bath in Arizona.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Re-Bath asserts a claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. This Court also has over the claims asserted herein pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Re-Bath and each of the Defendants, and the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Re-Bath's related state-law claims, including Re-Bath's claim under the Arizona Uniform Trade Secrets Act, A.R.S. § 44-401 et seq., because those claims arise from the same case or controversy as Re-Bath's Defend Trade Secrets Act claim, including Defendants' misappropriation and misuse of Re-Bath's confidential and proprietary information, franchise system, customer information, and post-termination obligations.

21. This Court has personal jurisdiction over NCBC and Zavala because the Franchise Agreements provide that:

> Any action brought by [Re-Bath] against [Franchisee] in any court, whether federal or state, may be brought within the state and judicial district in which [Re-Bath] or [Franchisee] have a principal place of business at the time the action is commenced.

Adding:

> [Franchisee] and [its] Principals hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.

(Ex. D, § 24.3).

22. This Court further has personal jurisdiction over Defendants because they purposefully directed activities toward Arizona and transacted business with Re-Bath in

Arizona, including by entering into the Franchise Agreements with an Arizona-based franchisor, directing communications and payments to Re-Bath in Arizona, purchasing products and services from Re-Bath and/or its affiliates, receiving franchise training, support, system materials, and operational assistance from Re-Bath, and agreeing to continuing contractual obligations owed to Re-Bath in Arizona.

23. This Court also has personal jurisdiction over Defendants because Defendants intentionally committed wrongful acts directed at Re-Bath with knowledge that Re-Bath maintains its principal place of business in Arizona and that the resulting harm to Re-Bath, its franchise system, its confidential information, its customer relationships, and its goodwill would be suffered in Arizona.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Re-Bath's claims occurred in this District, including the negotiation, execution, performance, administration, and breach of the Franchise Agreements and Guarantees, Defendants' communications and payments to Re-Bath in Arizona, Re-Bath's performance of franchise support obligations from Arizona, and the injury suffered by Re-Bath in Arizona.

25. Venue is also proper because NCBC and Zavala agreed to Arizona as a proper forum for disputes arising out of or relating to the Franchise Agreements, Guarantees, and related restrictive covenant obligations, including:

> "Any action brought by [Re-Bath] against [Franchisee] in any court, whether federal or state, may be brought within the state and judicial district in which [Re-Bath] or [Franchisee] have a principal place of business at the time the action is commenced."

(Ex. D § 24.3).

The Guarantees also provide that:

> "Subject to the obligations and provisions below, each of the undersigned agree that all actions arising under this Guarantee or the Agreement, or

> otherwise as a result of the relationship between us and the undersigned, shall be governed by the provisions of Section 24 of the Agreement."

(See Ex. F)

## GENERAL ALLEGATIONS

***Re-Bath's Franchise System and Manual***

26. Re-Bath is a nationally recognized bathroom remodeling franchisor that has operated under a franchise model since 1991. Throughout the decades of development, experience, and investment, Re-Bath has established a distinctive, highly valuable franchise system for bathroom remodeling services. Each franchisee who desires to acquire a Re-Bath franchise must enter into individual franchise agreements that govern the franchise relationship. Under such agreements, franchisees are required to comply with certain in-term and post-term duties and obligations in exchange for a limited license to a business system and format using Re-Bath's trademarks and methods that are proprietary to Re-Bath.

27. The distinguishing characteristics of Re-Bath's system is a business format and set of specifications and operating procedures ("System") which includes, without limitation

> "one (1) or more specially-designed buildings or facilities with specially developed equipment, equipment layouts, and signage; distinctive interior and exterior design, décor, color scheme and furnishings, fixtures and other trade dress elements; proprietary products; product standards and specifications, policies and procedures for construction, management and operations; installation and service standards, specifications, and techniques; quality, distinctiveness and uniformity of products and services; standards, specifications, and procedures for customer, lead, inventory, sales and financial management and control; customer service and satisfaction standards, policies, and procedures; training and assistance; and advertising and promotional programs, all as more particularly described and designated

> in the Manual and all of which we may change, improve, and further develop at our option from time to time."

(Ex. D, § B)

28. Re-Bath's confidential operating manual (the "Manual") describes aspects of the System and provides standards, requirements, policies, and methods for operation of the business. The Franchise Agreements provide that the Manual remains Re-Bath's sole property, must be kept secure, must be kept current, and may be revised by Re-Bath from time to time, with franchisees required to comply with each new or changed standard. The Franchise Agreements further provide that the Manual contains Confidential Information. (Ex. D., § 7).

29. The Franchise Agreements define and protect Re-Bath's Confidential Information, including as follows

> "You understand and agree that you will come into possession of certain of our trade secrets concerning the manner in which we conduct business including, but not limited to: methods of doing business or business processes; strategic business plans; customer lists and information; marketing and promotional campaigns; software; and other materials clearly marked or labeled as trade secrets. You agree that the foregoing information, which may or may not be considered 'trade secrets' under prevailing judicial interpretations or statutes, is private, valuable, and constitutes trade secrets belonging to us. You agree that we derive independent economic value from the foregoing information not being generally known to, and not being readily ascertainable through proper means by, another person."

(Ex. D § 8.1).

30. The Franchise Agreements further prohibit franchisees from communicating, divulging, or using Re-Bath's trade secrets, confidential information, knowledge, or know-how for the benefit of any other person or entity, and require franchisees to take reasonable

measures to keep such information secret. The Franchise Agreements also provide that any information, knowledge, know-how, and techniques designated by Re-Bath as confidential are deemed confidential, subject only to narrow exceptions for information that the franchisee can prove was rightfully known, publicly available through no breach, received from a non-confidential third-party source, or independently developed without reference to or use of Re-Bath's Confidential Information.

31. Re-Bath has developed, refined, and invested substantial amounts of time, money, and effort in creating the System and the Manual. Since 1991, Re-Bath has continually improved, modified, expanded, and strengthened the System and Manual to enhance operational performance, maximize franchisee success, maintain brand consistency, improve customer satisfaction, and preserve Re-Bath's competitive advantage in the bathroom remodeling industry.

32. Defendants have even acknowledged the importance of access to these materials under the Franchise Agreements, acknowledging that a "violation of the terms of this Section 16 would result in irreparable injury to [Re-Bath] for which no adequate remedy at law may be available, and [franchisee(s)] accordingly consent to the issuance of an injunction prohibiting any conduct by [franchisee] in violation of the terms of this Section 16 without the requirement of posting a bond." (Ex. D § 16.9).

33. The System, Manual, and Confidential Information are confidential and are provided only in limited circumstances to franchisees and approved individuals who agree to maintain their confidentiality and use them only in connection with operating an authorized Re-Bath franchised business. Such information is not generally known to the public, is not readily ascertainable by proper means, and derives independent economic value by remaining confidential. Because this information is not publicly known or readily ascertainable, the System, Manual, and Confidential Information are of substantial value to Re-Bath and provide Re-Bath and its authorized franchisees with a significant competitive advantage.

34. Re-Bath undertakes significant efforts to maintain the confidentiality of its System, Manual, and Confidential Information. Through franchise agreements, Re-Bath requires all franchisees to maintain the confidentiality and secrecy of the System, Manual and other information designated confidential by Re-Bath.

35. Exploitation of Re-Bath's System, Manual, and Confidential Information by a former franchisee such as NCBC, or any competitor, such as VKR, would provide an unfair competitive advantage by allowing such party to inappropriately capitalize upon decades of Re-Bath's development and investment. Such conduct undermines the value of the Re-Bath System and causes substantial and irreparable harm to Re-Bath and its franchise network.

***New California Bathroom Corp.***

36. NCBC became a Re-Bath franchisee on September 14, 2020 pursuant to the Temecula Franchise Agreement. Thereafter, NCBC entered into the Riverside Franchise Agreement, Oakland Franchise Agreement, and Bay North Franchise Agreement. Together, Zavala and NCBC operated the Franchised Businesses and received access to Re-Bath's System, Marks, Manual, Confidential Information, training, products, standards, and operational know-how.

37. Upon execution of each Franchise Agreement Re-Bath provided Zavala and NCBC with a copy of its Manual. The Franchise Agreement provides that the Manual "shall at all times remain [Re-Bath's] sole property" and must be kept secure and confidential. (Ex. D § 7.3).

38. The System and Manual were strictly only to be used in connection with the Defendants' operation of a Re-Bath franchise, as access ends in connection with termination or expiration of the applicable Franchise Agreement.

39. To protect Re-Bath's trade secrets, Confidential Information, Manual, Marks, and proprietary System, NCBC agreed under the Franchise Agreements that:

> "You shall not communicate, divulge, or use for the benefit of any other person or entity any trade secrets or any other confidential information, knowledge,

> or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to you or of which you may be apprised by virtue of your operation under the terms of this Agreement (‘Confidential Information’). For the purpose of clarity, the Manual contains our Confidential Information.”

(Ex. D. § 8.1)

40. The Franchise Agreements also imposed in-term and post-termination restrictive covenants designed to protect Re-Bath’s Confidential Information, trade secrets, goodwill, Marks, and proprietary System. Specifically, during the term of the Franchise Agreements, NCBC agreed:

> “You specifically acknowledge that, pursuant to this Agreement, you will receive valuable specialized training and Confidential Information, including information regarding our operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by us, you shall not either directly or indirectly, for yourself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:
>
> > Divert or attempt to divert any business or customer of the Franchised Business or of any Re-Bath Business using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the System.
> >
> > Own, maintain, operate, engage in, have any interest in or provide any assistance to . . . any ‘Competitive Business,’ which shall mean a business that offers products and/or services in connection with the replacement, remodeling, and/or updating of bathrooms, or that

> otherwise offers products or services that are the same as or similar to those offered by the Franchised Business . . . ."

(Ex. D. §§ 16.2 – 16.2.2)

41. Zavala also personally acknowledged the importance of Re-Bath's System, Confidential Information, Marks, and post-termination obligations. Under the Guarantees, Zavala unconditionally guaranteed NCBC's monetary and non-monetary obligations, agreed to indemnify Re-Bath for losses, damages, costs, and attorneys' fees arising from non-performance, and agreed to be individually bound by the Franchise Agreements' confidentiality, trademark, transfer, post-termination, and restrictive covenant obligations, including Sections 15 and 16.

42. The restrictive covenants are reasonable and necessary to protect Re-Bath's System, Confidential Information, trade secrets, customer relationships, Marks, goodwill, and the uniformity and integrity of the Re-Bath franchise network. The Franchise Agreements expressly provide that the covenants are "reasonable and necessary to protect the System, the Confidential Information, and the goodwill associated with the Marks." (Ex. D. § 16.7).

43. Defendants further recognized that violation of the Franchise Agreements' confidentiality and restrictive covenant obligations would cause irreparable harm to Re-Bath. The Franchise Agreements provide that violation of Section 16 "would result in irreparable injury" to Re-Bath "for which no adequate remedy at law may be available," and Defendants consented to the issuance of an injunction prohibiting conduct in violation of Section 16 "without the requirement of posting a bond." (Ex. D. § 16.9).

***<u>Zavala and NCBC Breach and Terminate the Franchise Agreements by Abandoning Operations</u>***

44. On April 22, 2026, Zavala and NCBC, through counsel, sent Re-Bath a putative notice of rescission concerning all four Franchise Agreements (the "Rescission Letter"). In the Rescission Letter, Zavala and NCBC declared that they "deem[ed] the

Franchise Agreements to be rescinded in their entirety." **A true and accurate copy of the Rescission Letter is attached hereto as Exhibit G**.

45. Zavala and NCBC had no contractual or legal right to unilaterally rescind the Franchise Agreements, abandon the Franchised Businesses, cease performance, retain the benefits of the Re-Bath System, and as further described below, continue operating in the bathroom remodeling industry through a competing business.

46. By sending the Rescission Letter, prematurely ceasing operation of the Franchised Businesses, failing and refusing to continue performing during the Franchise Agreements' ten-year initial terms, failing to pay royalties other fees, and failing to comply with their other monetary and non-monetary obligations, Zavala and NCBC materially breached, repudiated, and abandoned the Franchise Agreements and the Guarantees.

47. The Franchise Agreements expressly required Defendants to operate the Franchised Businesses in strict conformity with Re-Bath's System standards, maintain the Franchised Businesses open and in normal operation during the hours and days specified or approved by Re-Bath, and conduct daily operations under active full-time management. The Franchise Agreements also provided that abandonment, including stating an intention to abandon the Franchised Business or ceasing to open the Showroom to the public during required hours for three consecutive business days after commencing operations from the Showroom, constituted grounds for immediate termination. (Ex. D. § 14.2.3).

48. Zavala and NCBC's abandonment, repudiation, cessation of operations, and failure to perform were the operative acts that caused the termination of the Franchise Agreements and severed Re-Bath's future stream of royalties, fees, product sales and product-related revenues, and other amounts that would have been payable for the remainder of the Franchise Agreements' ten-year initial terms. Defendants' own wrongful conduct made continued performance impossible, caused the termination of the franchise relationship, and directly caused Re-Bath's damages, including lost future royalties and fees, and lost product sales.

49. Further, at that time, Defendants owed Re-Bath and affiliates at least $363,492.64 in outstanding invoices, $1,782,943.00 in extra territory fees for out-of-territory sales, which also constituted material breaches of the Franchise Agreements.

50. On May 22, 2026, after Defendants had already repudiated and abandoned the Franchise Agreements, Re-Bath sent Defendants a written response confirming that, as a result of Defendants' effective termination through abandonment and cessation of operations, the Franchise Agreements were terminated effective as of the date of the Rescission Letter. Re-Bath's May 22, 2026 correspondence also demanded that Defendants comply with their post-termination obligations, cease and desist from unlawful competitive conduct, pay amounts owed, return Re-Bath's confidential and proprietary materials, and stop causing further harm to Re-Bath and the Re-Bath System. **A true and accurate copy of Re-Bath's May 22, 2026 Notice of Material Breach and Termination is attached hereto as Exhibit H**.

***Zavala Establishes an Unlawful Competing Business in Breach of the Franchise Agreements***

51. On July 8, 2024, Zavala as agent and organizer formed and registered VKR as a California limited liability company. Upon information and belief, Zavala formed, owns, manages, directs, controls, and/or operates Valley Kitchen. Public records identify Zavala as Valley Kitchen's agent and list Valley Kitchen's principal address as 28822 Old Town Front Street, Suite 206, Temecula, California 92590. **A true and accurate copy of VKR's registration is attached hereto as Exhibit I**.

52. On or about April 3, 2026—before Zavala and NCBC sent the Rescission Letter—VKR obtained a California contractor's license under the name Valley Kitchen Remodeling LLC d/b/a Better Bath. The license identifies VKR as a limited liability company, lists the business address as 28822 Old Town Front Street, Suite 206, Temecula, California 92590 – an address adjacent to that of NCBC's principal address – and identifies

the license as current and active. **A true and accurate copy of VKR's contractor license for "Better Bath" is attached hereto as Exhibit J.**

53. Upon information and belief, sometime thereafter, VKR and/or Better Bath established an online presence to solicit customers for bathroom remodeling services in and around the Temecula and Concord, California markets. (https://betterbath.com/ last accessed August 10, 2026).

54. The areas in which Better Bath advertises and operates are within and overlap with the Territories and restricted areas covered by the Franchise Agreements, including the Protected Territories, the Approved Locations, areas within ten miles of those territories and locations, and/or the Protected Territories of other Re-Bath businesses.

55. Rather than comply with the Franchise Agreements' post-termination obligations, Zavala and NCBC rebranded and redirected their former Re-Bath operations into Better Bath, a competing bathroom remodeling business that offers the same or substantially similar services as the former Franchised Businesses.

56. Better Bath advertises bathroom remodeling services, including full bathroom remodels, tub and shower conversions, walk-in shower upgrades, shower-to-tub installations, custom glass shower enclosures, and related bathroom remodeling products and services.

57. Upon information and belief, Defendants have used, retained, transferred, or misappropriated Re-Bath products, materials, customer relationships, customer information, operating methods, confidential know-how, System standards, marketing materials, goodwill, and operational resources that were provided or developed solely for use in connection with the Franchised Businesses. Defendants have no right to use those materials, information, resources, or goodwill for Better Bath or any other competing business.

58. In Re-Bath's May 22, 2026 Notice of Material Breach and Termination, Re-Bath demanded that Defendants immediately comply with their post-termination obligations, cease operation of the competing business, de-identify from Re-Bath, cease all

use of Re-Bath's Marks, System, confidential information, proprietary materials, and intellectual property, return Re-Bath's confidential and proprietary materials, provide customer lists and customer contracts, and suspend all competing work within five days.

59. Re-Bath also invoked contractual post-termination rights, including its rights to acquire leases associated with the Franchised Businesses, purchase furnishings, equipment, signs, fixtures, supplies, and inventory used in connection with the Franchised Businesses, and assume unfulfilled or incomplete customer contracts. (Ex. D §§ 15.4, 15.9, 15.10.) Defendants have failed and refused to comply with those obligations or even respond to Re-Bath's notice of its invoking its rights to purchase and take over the business assets and location through assignment of the lease.

60. Instead, upon information and belief, Defendants have used the assets, customer relationships, confidential information, goodwill, and operational foundation of the former Franchised Businesses to launch, fund, support, and operate Better Bath.

61. This unlawful conduct constitutes an obvious and material breach of the Franchise Agreements and Guarantees, including the post-termination obligations in Section 15 and the restrictive covenants in Section 16 of the Franchise Agreements. Defendants' ongoing operation of Better Bath is causing Re-Bath immediate and irreparable harm, substantial damages, and ongoing injury to the goodwill, uniformity, and integrity of the Re-Bath System.

***<u>Defendants' Conduct is Causing Re-Bath Substantial Damages and Irreparable Injury</u>***

62. Each Franchise Agreement had a ten-year initial term and required Defendants to pay Re-Bath continuing royalties, advertising contributions, technology fees, product-related amounts, and other fees and charges arising from the operation of the Franchised Businesses. The Franchise Agreements otherwise required Defendants to pay minimum royalties and other minimum fees regardless of Defendants' actual performance, subject to the terms of the applicable agreements. (Ex. D. § 4, Exhibit A-1)

63. Re-Bath relies on franchise royalties, fees, advertising contributions, and related payments to support and grow the Re-Bath franchise system, maintain brand standards, provide franchise support, develop and improve the System, promote the Re-Bath brand, administer franchise programs, support National Account relationships, and protect the goodwill and uniformity of the Re-Bath franchise network.

64. By effectively wrongfully terminating and repudiating the Franchise Agreements, abandoning the Franchised Businesses, ceasing operations, and failing to perform during the Franchise Agreements' ten-year initial terms, NCBC and Zavala caused substantial monetary damages to Re-Bath, including unpaid invoices, unpaid royalties and fees, lost product sales, enforcement costs, liquidated damages, lost business opportunities, and lost future royalties and fees that Re-Bath would have received but for Defendants' wrongful conduct.

65. Re-Bath has calculated its damages arising from Defendants' defaults to include, among other amounts, at least $363,492.64 in outstanding invoices, $1,782,943.00 in extra territory fees for out-of-territory sales, and $1,837,900.00 in lost future royalties caused by Defendants' abandonment, repudiation, and resulting termination of the Franchise Agreements.

66. Zavala is personally liable for these amounts and obligations under the Guarantees. Under the Guarantees, Zavala guaranteed the punctual payment and performance of the franchisee's monetary and non-monetary obligations, agreed to indemnify Re-Bath for losses, damages, costs, expenses, and attorneys' fees arising from non-performance. (See Ex. F).

67. In addition, Defendants' breaches of their post-termination obligations and refusal to assist Re-Bath mitigate damages and retain the Re-Bath business, customers and good will in the Protected Territories through the post-termination rights to acquire the assets and location, has caused, and will continue to cause, substantial monetary and non-monetary harm to Re-Bath, including customer confusion, loss of goodwill, diversion of customers,

loss of sales, interference with Re-Bath's customer relationships, misuse of Re-Bath's Confidential Information, and misappropriation of the competitive advantages Defendants obtained through their former access to Re-Bath's System, Manual, products, standards, training, and operational know-how. (Ex. D § 16.9.)

68. Defendants' unauthorized conduct has impaired and continues to impair Re-Bath's ability to refranchise, redevelop, service, and protect the former Franchised Businesses' markets. Any prospective replacement franchisee or authorized Re-Bath operator would be forced to compete against Defendants, who are improperly using the experience, customer relationships, operational knowledge, business methods, and competitive advantages obtained through the Re-Bath franchise system.

69. Defendants' conduct has resulted and will continue to result in lost sales, lost customers, lost business opportunities, loss of franchise opportunities, disruption of Re-Bath's ability to operate and develop within the affected markets, and injury to the goodwill and integrity of the Re-Bath System.

70. Defendants' attempted capitalization on and misuse of Re-Bath's System, Manual, Confidential Information, customer relationships, and operational know-how also threatens the confidentiality and value of Re-Bath's proprietary methods, customer acquisition strategies, customer information, trade secrets, and other confidential business information developed through decades of investment and innovation.

71. As a direct and proximate result of Defendants' wrongful conduct, Re-Bath has suffered and will continue to suffer irreparable harm, including, without limitation, loss of sales, loss of customers and business opportunities, loss of franchise opportunities, loss of competitive advantage, loss of trade secret protection, injury to the value and integrity of the System and Manual, damage to Re-Bath's goodwill and reputation, and interference with Re-Bath's ability to maintain and grow a uniform and successful franchise network.

72. Monetary damages alone cannot fully compensate Re-Bath for Defendants' ongoing misuse of Re-Bath's Confidential Information and System, continued competition

in restricted areas, diversion of customers, interference with Re-Bath's franchise network, and harm to Re-Bath's goodwill and brand integrity. Re-Bath is therefore entitled to permanent injunctive relief enforcing Defendants' post-termination obligations, requiring Defendants to cease their unlawful competitive conduct, and preventing further misuse of Re-Bath's System, Manual, Confidential Information, customer information, Marks, goodwill, and proprietary materials.

**COUNT I – BREACH OF CONTRACT**
**AGAINST NCBC**

73. Re-Bath incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

74. The Franchise Agreements are valid and enforceable contracts between Re-Bath and NCBC. Under the Franchise Agreements, NCBC agreed, among other things, to operate the Franchised Businesses during the ten-year initial terms; operate the Franchised Businesses in strict conformity with Re-Bath's System, methods, standards, and specifications; keep the Franchised Businesses open and in normal operation during the hours and days specified or approved by Re-Bath; conduct daily operations under active full-time management; protect Re-Bath's Marks, System, Manual, Customer Data, Confidential Information, and goodwill; pay royalties, advertising contributions, technology fees, product charges, and other amounts due; and comply with all post-termination obligations.

75. The Franchise Agreements also prohibit unauthorized out-of-territory installations, projects, and sales, providing:

> "If the Franchised Business installs any products, or provides any services that are identified by the Marks or otherwise authorized for sale by Re-Bath Businesses, at a location within the geographic area in which we have granted territorial protection or exclusive rights to another franchisee or licensee, or within a twenty-mile (20-mile) radius of a Re-Bath Business that is owned or operated by us or our affiliate, without prior written consent from us, then the following provisions shall apply[.]"

(Exs. C, D, E § 1.4)

> "If the Franchised Business installs any products, or provides any services that are identified by the Marks or otherwise authorized for sale by Re-Bath Businesses, at a location within the geographic area in which we have granted territorial protection or exclusive rights to another franchisee or licensee, or within a twenty-mile (20-mile) radius of a Re-Bath Business that is owned or operated by us or our affiliate, without prior written consent from us or such franchisee, licensee, or affiliate, then the following provisions shall apply[.]"

(Ex. B § 1.4)

76. Completing unauthorized work outside of the Franchised Business Territories required Defendants to pay an out-of-territory sales fee, including:

> "We may require you to immediately pay to us or, at our option, to the franchisee, licensee, or affiliate, liquidated damages in an amount equal to fifty percent (50%) of your Average Ticket . . . for each unauthorized installation, project, or sale. . . . If any such unauthorized installation, project, or sale occurs two (2) or more times within any twelve-month (12-month) period, it shall constitute an event of default under this Agreement and grounds for termination."

(Exs. C, D, E § 1.4.1.)

> "We may require you to immediately pay to us or, at our option, to the franchisee, licensee, or affiliate, liquidated damages of Five Thousand Dollars ($5,000) per installation, project, or sale. If any such unauthorized installation, project, or sale occurs two (2) or more times within any twelve-month (12-month) period, it shall constitute an event of default under this Agreement and grounds for termination."

(Ex. B § 1.4.1.)

77. The Franchise Agreements also required NCBC, upon termination, to immediately cease operating the Franchised Businesses; cease using Re-Bath's Marks, System, confidential methods, procedures, techniques, materials, and identifiers; return the Manual and all Confidential Information; provide and assign unfulfilled or incomplete customer contracts; cooperate with Re-Bath's step-in, lease, inventory, equipment, and contract-assignment rights; pay all amounts owed; and refrain from diverting customers or owning, operating, assisting, or participating in a Competitive Business within the restricted areas.

78. Re-Bath performed all conditions, covenants, and obligations required of it under the Franchise Agreements.

79. NCBC has breached and continues to materially breach the express terms of the Franchise Agreements in the following manner:

(a) repudiating the Franchise Agreements and purporting to rescind them in their entirety;

(b) abandoning and ceasing operation of the Franchised Businesses on or about April 22, 2026, well before expiration of the Franchise Agreements' ten-year initial terms;

(c) failing and refusing to operate the Franchised Businesses in strict conformity with Re-Bath's System, standards, specifications, Manual, and Franchise Agreements;

(d) failing to keep the Franchised Businesses open and in normal operation as required;

(e) failing to pay royalties, advertising contributions, technology fees, product charges, outstanding invoices, and other amounts due;

(f) Making out of territory sales as follows and not paying the owed out of territory fees:

(i) fifty seven (57) out-of-territory sales under the Temecula Franchise Agreement between 2024 and 2025, forty eight (48) of which were in other Re-Bath franchisee's protected territories;

(ii) eight (8) out-of-territory sales under the Riverside Franchise Agreement in 2025, one (1) of which was in another Re-Bath franchisee's protected territory; and

(iii) seventy six (76) out-of-territory sales under the Oakland Franchise Agreement between 2024 and 2025, sixty seven (67) of which were in other Re-Bath franchisee's protected territories.

(g) failing to comply with post-termination obligations, including de-identification, return of the Manual and Confidential Information, cessation of use of Re-Bath's System and proprietary materials, and assignment or cancellation of identifiers;

(h) failing to provide and assign unfulfilled or incomplete customer contracts and related customer information;

(i) failing to cooperate with Re-Bath's contractual rights to assume or acquire leases, customer contracts, furnishings, equipment, signs, fixtures, supplies, and inventory used in connection with the Franchised Businesses;

(j) using, retaining, transferring, or failing to return Re-Bath's Confidential Information, Customer Data, System materials, operational know-how, and proprietary materials;

(k) diverting or attempting to divert customers, business opportunities, goodwill, and customer relationships away from Re-Bath and the Franchised Businesses; and

(l) owning, operating, assisting, supporting, and/or participating in Valley Kitchen Remodeling, LLC d/b/a Better Bath, a Competitive Business operating within the restricted areas.

80. As a direct and proximate result of NCBC's conduct in material breach of the Franchise Agreements, Re-Bath has suffered and will continue to suffer damages and irreparable harm to its goodwill, reputation, System, Confidential Information, Manual and earned competitive advantage.

**COUNT II – BREACH OF CONTRACT: GUARANTEES AGAINST ZAVALA**

81. Re-Bath incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

82. The Guarantees are valid and enforceable contracts between Re-Bath and Zavala. Under the Guarantees, Zavala unconditionally guaranteed the payment and performance of the franchisee's monetary and non-monetary obligations under the Franchise Agreements, agreed to make payments required under the Franchise Agreements upon demand, agreed to defend, indemnify, and hold Re-Bath harmless from losses, damages, liabilities, costs, expenses, and attorneys' fees arising from the franchisee's failure to perform, and agreed to remain bound by covenants that continue after termination or expiration of the Franchise Agreements.

83. Zavala also personally agreed to be individually bound by, and personally liable for breaches of, the Franchise Agreements' confidentiality, trademark, transfer, post-termination, restrictive covenant, dispute-resolution, and related obligations, including Sections 15 and 16 of the Franchise Agreements. Under the 2024 Guarantees, Zavala further agreed to be personally bound by, and personally liable for breach of, each and every provision of the Franchise Agreements and related agreements.

84. NCBC and/or the franchisee breached the Franchise Agreements as alleged above. Zavala is liable for those breaches and resulting damages under the Guarantees.

85. Zavala has breached and continues to materially breach the express terms of the Guarantees by, among other things:

(a) failing to ensure the franchisee's punctual payment and performance of its monetary and non-monetary obligations under the Franchise Agreements;

(b) failing to pay amounts due to Re-Bath under the Franchise Agreements and Guarantees upon demand, including past due amounts, out of territory fees, and lost future damages, as set forth above;

(c) failing to indemnify Re-Bath for losses, damages, liabilities, costs, expenses, and attorneys' fees arising from the franchisee's breaches and non-performance;

(d) failing to comply with post-termination obligations, including obligations to de-identify, return the Manual and Confidential Information, cease use of Re-Bath's System and proprietary materials, and provide or assign customer contracts and related information;

(e) failing to comply with restrictive covenants in Section 16 of the Franchise Agreements;

(f) diverting or attempting to divert customers, business opportunities, goodwill, and customer relationships away from Re-Bath and the Franchised Bus

(g) inesses;

(h) forming, owning, operating, assisting, supporting, and/or participating in VKR, a direct competitor of Re-Bath within the restricted areas set forth under the Franchise Agreements;

(i) using, retaining, transferring, or failing to return Re-Bath's Confidential Information, Customer Data, System materials, operational know-how, and proprietary materials; and

(j) personally authorizing, directing, participating in, and ratifying the franchisee's breaches of the Franchise Agreements and Defendants' post-termination misconduct.

86. As a direct and proximate result of NCBC's conduct in material breach of the Franchise Agreements, Re-Bath has suffered and will continue to suffer damages and irreparable harm to its goodwill, reputation, System, Confidential Information, Manual and earned competitive advantage.

**COUNT III – DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 et seq.) AGAINST ALL DEFENDANTS**

87. Re-Bath incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

88. Re-Bath owns valuable trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), including its confidential and proprietary System, Manual, Confidential Information, Customer Data, customer lists and information, sales methods, installation methods, marketing strategies, business processes, software-related data, operational methods, vendor and product standards, training materials, pricing and lead-management practices, and other non-public information used to support its franchise network.

89. Re-Bath's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from their disclosure or use. Re-Bath has developed its trade secrets for over three decades and takes reasonable measures to maintain the secrecy of its trade secrets, including through the Franchise Agreements, confidentiality provisions, operating manuals, access restrictions, post-termination obligations, and restrictions on Defendants' use and disclosure of Re-Bath's confidential and proprietary information.

90. Defendants obtained access to Re-Bath's trade secrets through their franchise relationship with Re-Bath and were authorized to use that information only for the limited purpose of operating authorized Re-Bath franchised businesses during the term of the Franchise Agreements. (Ex. D §§ 1.1, 7.1–7.3, 8.1, 5.21, 9.5).

91. Defendants misappropriated Re-Bath's trade secrets, and continue to do so, by acquiring, retaining, using, and disclosing Re-Bath's trade secrets after repudiating and abandoning the Franchise Agreements, including by using Re-Bath's trade secrets to launch, support, operate, promote, and compete with Re-Bath through VKR.

92. Defendants knew or had reason to know that their access to and use of Re-Bath's trade secrets was limited by the Franchise Agreements and that they had no right to retain, use, disclose, or exploit Re-Bath's trade secrets for any competing business or for any purpose other than operating authorized Re-Bath franchised businesses. (Ex. D §§ 1.1, 5.21, 7.1–7.3, 8.1, 9.5, 15.3, 16.2–16.3).

93. As a direct and proximate result of Defendants' misappropriation, Re-Bath has suffered and continues to suffer damages, loss of competitive advantage, loss of customer relationships, loss of refranchising opportunities, diversion of business, injury to goodwill, and other irreparable harm.

94. Defendants' conduct was willful and malicious, entitling Re-Bath to exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3).

**COUNT IV – MISAPPROPRIATION OF TRADE SECRETS**
**(A.R.S § 44-401, et seq.)**
**AGAINST ALL DEFENDANTS**

95. Re-Bath incorporates by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

96. Re-Bath's proprietary and confidential System, Confidential Information, and Manual constitute trade secrets as set forth in A.R.S. § 44-104, et seq.

97. The System, Confidential Information, and Manual are of substantial economic importance and value to Re-Bath and would be of great value to its competitors.

98. Re-Bath's System, Confidential Information and Manual could not be duplicated from sources that are a matter of public knowledge.

99. Re-Bath maintains reasonable security measures to protect the secrecy and confidentiality of its System, Confidential Information, and Manual.

100. Re-Bath's System, Confidential Information, and Manual are protectable trade secrets because they represent valuable proprietary information concerning Re-Bath's business model, methods, techniques and processes.

101. Re-Bath's System, Confidential Information, and Manual are the result of decades of substantial efforts to identify and cultivate its business over the course of many years.

102. Re-Bath's System, Confidential Information, and Manual provide a source of competitive advantage to Re-Bath over others in the remodeling industry.

103. Upon information and belief, Defendants are misusing Re-Bath's System, Confidential Information, and Manual to fund and advance their remodeling business and compete with Re-Bath in the former franchise Territory.

104. Defendants are misappropriating Re-Bath's System, Confidential Information, and Manual through improper means, disclosure and/or use of such trade secrets in violation of A.R.S. § 44-401, et seq.

105. Defendants have intentionally misappropriated Re-Bath's System, Confidential Information, and Manual for their own benefit and for the purpose of competing with Re-Bath via Better Bath.

106. As a direct and proximate result of Defendants' wrongful conduct, Re-Bath has suffered and will continue to suffer, incalculable loss of sales, loss of business opportunities, diminished value of its proprietary System, loss of confidentiality of its trade secrets, loss of competitive advantage, and the loss of goodwill and other damages.

107. Without injunctive relief, Re-Bath will continue to suffer irreparable injury for which monetary damage alone will not adequately compensate nor remedy Re-Bath's harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, Re-Bath prays for an order of this Court:

1. An order entering judgment against Defendants and in favor of Re-Bath on all causes of action stated herein;

2. An order enjoining Defendants, and their officers, directors, members, managers, employees, agents, representatives, successors, assigns, affiliates, entities owned or controlled by Defendants, and all persons or entities acting in concert or participation with any of them, from:

(a) using, disclosing, copying, transmitting, retaining, or exploiting Re-Bath's trade secrets, System, Manual, Confidential Information, customer information, Customer Data, operational methods, proprietary materials, marketing materials, know-how, or other confidential or proprietary information;

(b) using Re-Bath's Marks, trade dress, copyrighted materials, advertising materials, photographs, marketing content, identifiers, domain names, social media accounts, telephone numbers, email addresses, customer reviews, or any other materials or identifiers associated with Re-Bath or the Re-Bath System;

(c) diverting or attempting to divert any customer, prospective customer, business opportunity, or goodwill of the Franchised Businesses, Re-Bath, or any Re-Bath franchisee;

(d) owning, operating, managing, maintaining, assisting, engaging in, having any interest in, or providing any assistance to any Competitive Business within the restricted areas described in the Franchise Agreements, including through VKR or any other entity;

(e) representing or implying any present or former affiliation, association, sponsorship, approval, or connection with Re-Bath, the Re-Bath System, or the Re-Bath Marks; and

(f) otherwise violating the Franchise Agreements' post-termination obligations, confidentiality provisions, and restrictive covenants.

3. An order requiring Defendants to comply with all post-termination obligations under the Franchise Agreements and Guarantees, including by requiring Defendants to:

(a) immediately cease all use of Re-Bath's Marks, System, Manual, Confidential Information, customer information, Customer Data, identifiers, and proprietary materials;

(b) return or destroy all copies of Re-Bath's Manual, Confidential Information, trade secrets, customer information, Customer Data, proprietary materials, marketing materials, operational materials, and other property of Re-Bath, whether in physical, electronic, cloud-based, or other form;

(c) provide sworn written certification identifying the steps taken to return, destroy, and cease use of Re-Bath's materials and information;

(d) provide copies of all unfulfilled or incomplete customer contracts, the status of each contract, customer deposits or payments received, and all related customer and project information;

(e) assign unfulfilled or incomplete customer contracts to Re-Bath or its designee as required by the Franchise Agreements;

(f) cancel or assign to Re-Bath or its designee all telephone numbers, domain names, email addresses, websites, social media accounts, directory listings, online profiles, assumed names, fictitious names, and other identifiers used in connection with the Franchised Businesses or that reference or are associated with Re-Bath;

(g) cooperate with Re-Bath's contractual rights to assume or acquire leases and to purchase furnishings, equipment, signs, fixtures, supplies, inventory, and other assets used in connection with the Franchised Businesses, subject to any contractual offsets; and

(h) provide a complete accounting of all customer contracts, revenues, jobs, leads, sales, deposits, inventory, equipment, Re-Bath materials, and profits derived from Defendants' competing operations;

4. An award of damages in an amount to be determined at trial, including lost future royalties and fees, lost product sales and product-related revenues, enforcement costs, costs incurred to service customers and protect the territories, damages caused by Defendants' abandonment, damages caused by Defendants' post-termination breaches, and all other damages available under the Franchise Agreements, Guarantees, and applicable law;

5. An award of prejudgment and post-judgment interest at the maximum rate permitted by contract or law;

6. An award of Re-Bath's costs, expenses, and reasonable attorneys' fees under the Franchise Agreements, Guarantees, and applicable law;

7. An order establishing Defendants as constructive trustees of any profits by which they are unjustly enriched, together with interest during the period when Defendants retain such funds, and requiring Defendants to disgorge those funds to Re-Bath;

8. An order requiring Defendants to provide for destruction of Re-Bath's trade secret information and materials, and proof of evidence of such actions; and

9. Any additional relief this Court deems just and proper.

Dated: August 10, 2026

**POLSINELLI PC**

By: _/s/ Eric E. Lynch_
Eric E. Lynch
Jack L. Horstmann
One E. Washington Street, Suite 1200
Phoenix, AZ 85004
*Attorneys for Plaintiff Re-Bath LLC*